**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **MARQUES J. RENE,**<br>**12601 Capernwray Terrace**<br>**Chesterfield, Virginia 23838,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**JENNIFER M. GRANHOLM,**<br>**Secretary, UNITED STATES**<br>**DEPARTMENT OF ENERGY,**<br>**1000 Independence Avenue, S.W.**<br>**Washington, D.C. 20585,**<br><br>**SERVE:**<br>**Jennifer M. Granholm**<br>**Secretary**<br>**1000 Independence Avenue, S.W.**<br>**Washington, D.C. 20585,**<br><br>    **Defendant.** | **Civil Action No:**<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**NOW COMES** Plaintiff, Marques J. René, by and through his undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this Complaint for damages.  Plaintiff states herein as follows:

### JURISDICTION AND VENUE

1.      This action is authorized and instituted pursuant to the Vocational Rehabilitation Act of 1973 ("VRA" or "Rehabilitation Act"), 29 U.S.C. §§791 and 794(a) and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e-5 and 2000e-16(c).  As this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.

1

2.    The claims described in this Complaint occurred within this judicial district and venue properly lies in this judicial district.  Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

3.    Plaintiff, Marques J. René, is a male citizen of the United States of America and resides in the Commonwealth of Virginia. Plaintiff is of Haitian descent and his skin is dark-hued.

4.    Plaintiff is an employee protected by the VRA and Title VII.

5.    Defendant, Jennifer M. Granholm, is the Secretary of the Department of Energy ("Department") and is the designated representative of the Department.

## ADMINISTRATIVE PROCEDURES

6.    Plaintiff has a history of engaging in protected activities.  Beginning in October 2018, Plaintiff began opposing unlawful employment practices. After initiating contact with the Department's EEO office on August 18, 2020, on November 24, 2020, Plaintiff filed an administrative Formal Complaint of Discrimination ("EEO Complaint"), alleging unlawful harassment, discrimination and harassment based on his race, national origin (Haitian), gender and disability. That EEO Complaint was assigned Case No. 20- 0105-HQ-LP.  Plaintiff  subsequently amended that Complaint to include continuing violations, including constructive discharge.

7.    More than one hundred eighty (180) days have elapsed from Plaintiff's filing of his formal complaint of harassment, discrimination and retaliation with the Agency.  No final action has been taken by the Agency.  Pursuant to §717(c) of Title VII, 42 U.S.C. § 2000e-16(c), this Complaint is being filed within ninety (90) days of Plaintiff's receipt of the FAD.

8.    This Court has jurisdiction over the claims asserted in this Complaint.

2

9.     All of Plaintiff's claims arising under the Title VII and the VRA alleged in this Complaint were or could have been considered during the administrative investigation and they reasonably followed from the allegations contained in the administrative complaint of discrimination and retaliation.

10.     Plaintiff therefore invokes his right to bring this civil action in that he has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS

11. At all times relevant to this Complaint, Plaintiff, who is a veteran of the United States armed Forces, and is rated as having a 90% service-connected disability by the U.S. Department of Veterans Affairs, has suffered from physical and mental conditions, including Post Traumatic Stress Disorder ("PTSD"), migraine headaches and severe back pain.  He also suffers from depression and anxiety disorders.  Those physical and mental impairments substantially limit multiple life activities, including standing, sitting, walking, lifting, concentrating, cognition, focusing and working.

13.     At all times relevant to this Complaint, Plaintiff was a "qualified individual with a disability" within the meaning of the VRA, since he could perform the essential functions of his job with or without reasonable accommodation.

14.     Although Plaintiff  sought reasonable accommodations from Defendant, those efforts were delayed or ignored by Defendant.

15.     Plaintiff was hired by the Department's Loan Programs Office ("LPO") on  February 19, 2017, as a GS 13/14 Loan Specialist in the Asset Monitoring and Supervision Branch ("Branch"). That was a "ladder" position that carried with it a promotion from a GS-13 to a GS-14 level after a year's successful performance in that position.  Plaintiff worked in the LPO from his date of hire,

until February 2021, when he transferred to a position in another federal agency, the Pension Benefit Guaranty Corporation ("PBGC").

16.    Plaintiff was rated as a "Meets Expectations" performer in his (1) 2017 Supervisory/Non-Supervisory Performance Plan and Appraisal Form ("PPA Form") for the period February 19 through September 30, 2017, dated October 31, 2017); (2) 2018 PPA Form for the period October 1, 2017 through September 30, 2018, dated November 2, 2018; and (3) 2019 PPA Form for the period October 1, 2018 through September 30, 2019, dated January 6, 2020. In those performance appraisals, Plaintiff never received a score of less than Meets Expectations on any performance element that was critical to performance at the GS-14 grade level.

17.    Despite that record of having performed his job duties at a Meets Expectations level, Plaintiff never received the ladder promotion to a GS-14 level.

18.    During his tenure in the Branch, Plaintiff had several immediate supervisors, Heather Menze (Caucasian female), Mr. Hernan Cortes (Hispanic male) and Mauricio Paredes (Hispanic male). Plaintiff's second-level supervisors were Rupinder Kaur (Indian female) and Robert Marcum (Caucasian male).

19.    Mr. Cortes made fun of Plaintiff because he has an accent and is Haitian. Cortes informed LPO personnel that he did not want Plaintiff to interact with LPO's customers because it would be bad business for the Department of Energy.

20.    At or about the time of Plaintiff's hire, LPO hired two other veterans, Clarence Baldwin (African American male) and Ted Saunders (Caucasian male). After a short tenure, Mr. Saunders was reassigned to another unit in the Department, and Mr. Baldwin was terminated.

21.    During his LPO tenure, until his most recent PPA Form, Plaintiff consistently was rated as a "Meets Expectations" performer. In his PPA Form for the October 1, 2018 – September 30,

4

2019 performance cycle, signed by Plaintiff on January 6, 2020, he was rated as "Meets Expectations." No deficiencies were noted in those PPA Forms.

22. From the time of his hire, Plaintiff and his fellow veterans were hired, they were not assigned any work. After about two months, Ms. Menze was assigned as Plaintiff's supervisor.

23. Initially, Plaintiff was denied any explanations, guidance, training and support regarding his job responsibilities. Plaintiff simply was left in an office with another Loan Specialist (Clarence Baldwin) with nothing to do, without reading materials. No training was provided.

24. Although Plaintiff repeatedly approached Ms. Menze requesting work assignments and training, she ignored those queries.

25. After repeated requests for work from Plaintiff, Ms. Menze, on March 22, 2017, e-mailed John McHugh (Loan Specialist) to forward a sector report to Plaintiff for his review. No guidance or explanations were provided to Plaintiff by Ms. Menze. Although Ms. Menze, on March 30, 2017, e-mailed to Plaintiff the link to a project known as the Desert Sunlight LLC DS250/DS300 credit memo for review, no explanations or guidance were provided by Ms. Menze.

26. On May 11, 2017, Plaintiff asked Ms. Menze for an additional project (AVSR). She rejected Plaintiff's request, informing him that there were not enough projects to pass around.

27. Plaintiff subsequently unofficially was assigned to the Desert Sunlight LLC (DS250/DS300) project under the guidance of Gary Bloomberg (Senior Loan Specialist).

28. In an April 3, 2018 self-evaluation meeting with Mr. Cortes, Plaintiff expressed the need for training in several areas – Financial Accounting, Problem Loans and Risk Analysis, Using Financial Analysis for Credit Decisions and Risk Analysis. During a subsequent mid-year review with Mr. Cortes, that proposal was rejected by Mr. Cortes, who callously informed Plaintiff that the LPO did not have the budget for such training. No further guidance was offered by Mr. Cortes.

29.     Mr. Cortes also refused to provide Plaintiff with an Individual Development Plan ("IDP") that would have placed him on the path for full performance at the GS-14 level.

30.     In June 2018, Plaintiff expressed to Mr. Cortes his interest in working with and shadowing Senior Portfolio Manager Melissa Smith or others to create an individual development plan (IDP) that would put him on the path of the full performance level GS-14. Mr. Cortes denied that opportunity for on-the-job training.  That experience would have provided Plaintiff with guidance and experience to enable him to better perform his duties and responsibilities as a Portfolio Manager.

31.     All of those opportunities for training denied to Plaintiff (courses, IDP and mentoring) regularly were provided by LPO supervisors to Plaintiff's peers not in his protected classifications and that had not engaged in protected activities, including, but not limited to, Sarika Mougdil (Indian, female).

32.     In July 2018, when a Portfolio Manager ("PM") for the AVSR account resigned, a lower-rated co-worker, Mathew Williams (Caucasian, non-disabled), was assigned as the Acting PM. Although Plaintiff had had asked Ms. Menze for that assignment, he was informed that Mr. Cortes wanted to assign Mr. Williams to the acting position.

33.     Subsequent to April 2018, Mr. Cortes continued to deny Plaintiff the opportunity to take classes, create an individual development plan and train with experienced DOE professionals (Kaur Rupinder, David Farrell, Anita Martin, Smith Melissa, Arora Nana). Unlike Mr. Cortes' treatment of Plaintiff, Mr. Cortes and other LPO managers developed and implemented IDPs for the employees not in his protected classifications and that had not engaged in protected activities that he and they supervised. Similarly, those managers provided training for Plaintiff's co-workers,

not in his protected classifications and that had not engaged in protected activities, including Ms. Moudgil.

34.     In October 2018, during a performance appraisal meeting to discuss his 2018 PPA Form, Plaintiff queried Mr. Cortes and Mr. Marcum about his failure to receive the ladder promotion to the GS-14 level.  Plaintiff explained that he was a Meets Expectations performer and that he should have been promoted to the GS-14 level as had been done with loan specialists outside his protected classifications, such as Sarika Mougdil.  He informed Cortes and Marcum that he believed that he was not promoted because of his protected classifications (race, color, national origin, disability).  After Plaintiff opposed what he considered to be unlawful employment practices, he became the subject of harassment, discrimination and retaliation by LPO managers.  Those actions continued unabated throughout Plaintiff's career in the LPO.

35.      In March 2019, when one of the LPO project off-takers, (PG&E), filed for bankruptcy, Plaintiff was removed from the Desert Sunlight LLC (DS250/DS300) project. The project was reassigned to Ms. Moudgil and Plaintiff was reassigned to the Great Basin Transmission South LLC ("GBTS" or "SWIP").  That project required minimal work, leaving Plaintiff without challenging work. All other LPO PMs, not in Plaintiff's protected classifications and that had not engaged in protected activities, including Shiva Decosimo, David Farrell, and Anita Martin, kept their PG&E-related projects.  The DS250/DS300 project also was removed from Plaintiff. He was provided no explanations for those actions.

36.     In November 2019, during a performance appraisal meeting to discuss his 2019 PPA Form, Plaintiff again queried Mr. Cortes and Mr. Marcum about his failure to receive the ladder promotion to the GS-14 level.  Plaintiff explained that he again was a Meets Expectations performer and that he should have been promoted to the GS-14 level as had been done with loan

specialists outside his protected classifications, such as Ms. Mougdil.  He informed Cortes and Marcum that he believed that he was not promoted because of his protected classifications, as well as because of his prior protected activities.

37.    In May 2019, before the onset of the COVID-19 pandemic, Plaintiff requested a reasonable accommodation for his disabilities (for PTSD episodes associated with his mother's recent death), permitting him to work remotely three (3) days per week. Plaintiff supported that request with medical documentation.  That request was granted for a six-month period.

38.    On February 24, 2020, Plaintiff submitted a successor request for reasonable accommodation, seeking renewal, for a one-year period, of the 3-days per week telework accommodation.  That request was supported by medical documentation.  The request required approval from Plaintiff's manager.  Several weeks later, because of the COVID-19 pandemic, Plaintiff, like all federal workers, was required to work remotely. In August 2020, having not received approval from his manager to his February 2020 request for reasonable accommodation, Plaintiff inquired about the status of his request for reasonable accommodation. That reasonable accommodation determination was not signed by LPO manager, Mr. Mauricio Paredes, until September 1, 2020. The reasonable accommodation was not for a one-year period, but for a six-month period, from September 1, 2020, until February 24, 2021.  On August 24, 2020, Plaintiff submitted a COVID-19 Phase 3 Telework Agreement ("Telework Agreement").  The Telework Agreement never was signed by Plaintiff's managers.

39.    Despite having been afforded a reasonable accommodation of his disabilities through telework, Plaintiff was harassed by Mr. Paredes regarding his telework usage.  Paredes regularly complained that Plaintiff teleworked "too much" and that Plaintiff needed to come into the office, even on days when Plaintiff was working under the approved telework agreement. Paredes

regularly would badger Plaintiff for schedules and additional information.  Plaintiff daily provided the information requested by Paredes. Co-workers, not in Plaintiff's protected classifications or that had not engaged in protected activities, including Ms. Mougdil, were not similarly badgered while they were teleworking.

40.    Although Plaintiff regularly reported Mr. Paredes' harassing and discriminatory conduct to Mr. Cortes, no effective remedial actions were taken by Defendant.

41.    During a progress review held on April 24, 2020, Mr. Cortes never informed Plaintiff that he was not delivering at least a "Meets Expectations" job performance.  Neither Mr. Cortes nor Mr. Paredes told Plaintiff that he was failing to meet expectations in two Critical Elements.

42.    Efforts by Plaintiff to expand his portfolio also were rejected by Mr. Cortes and other LPO managers.  In March 2018, Plaintiff requested assignment to the AVSR project as a project manager, but that request was denied.  In August 2020, Plaintiff's request to add the Granite project to his portfolio also was rejected by Mr. Cortes.

43.    In Summer 2020, Plaintiff filed a complaint with the U.S. Department of Labor's Office of Veterans' Employment and Training Services ("VETS"), alleging discrimination and retaliation based on his veteran status.

44.    On August 18, 2020, Plaintiff received a Performance Demonstration Period ("PDP") document. Prior to that date, Plaintiff never had been placed on notice of any alleged performance deficiencies. In January 2020, when Plaintiff signed the 2019 performance cycle PPA Form, Mr. Marcum and other managers noted that Plaintiff was performing at a Meets Expectations level.

45.    The PDP, which covered a 45-day period (August 17-September 30, 2020), imposed ten (10) components that needed to be completed by September 30, 2020.  Some actions, such as "taking a credit reasoning and business writing course," were impossible to complete during the

brief performance demonstration period.  The actions required in the PDP were unreasonable and unachievable.  Other LPO employees, not in Plaintiff's protected classifications and that had not engaged in protected activities, including Sarika Moudgil, had performance problems, but were not been placed on PDPs.  The 45-day period described in the PIP was excessively short and failed to comply with Agency procedures, policies, regulations and guidelines.

46.     Following that meeting, Plaintiff, on August 18, 2020, initiated contact with Agency EEO representatives and filed an informal complaint of harassment, discrimination and retaliation.

47.     On September 4, 2020, Defendant was informed of Plaintiff's VETS claims.  That matter remained open during Plaintiff's remaining tenure with Defendant.

48.     Plaintiff endeavored to satisfy the unreasonable and unachievable demands in the PDP.

49.     Plaintiff, in late September 2020, applied for a bereavement-related leave of absence for a funeral and memorial service for his mother.  That request initially was denied by Plaintiff's current supervisor, Mr. Paredes.  That action was unprecedented, since no other LPO employees ever had been denied bereavement leave.  After Plaintiff's collective bargaining representative, the National Treasury Employees Union, Chapter 213 ("NTEU"), filed a grievance, the Agency resolved that grievance at the 1st Step by granting the requested leave.

50.      On October 13, 2020, Mr. Paredes gave Plaintiff a Completion of Performance Demonstration Period (PDP).  In that document, Paredes informed Plaintiff that he had not satisfied the PDP's requirements and that he was "in the process of determining the appropriate corrective action."

51.     On November 19, 2020, Plaintiff was issued a Notice of Proposed Removal ("NOPR").

52.     On November 20, 2020, NTEU filed a grievance on  Plaintiff's behalf.

10

53.     Because of the abusive discriminatory and retaliatory environment in the LPO, Plaintiff, beginning in Fall 2020, sought a transfer out of that work environment.

54.     On January 11, 2021, his treating psychiatrist, Dr. Ninala Jennefer Wilkinson, recommended that, because of the extreme hostile work environment in the LPO, Plaintiff remove himself from the hostile stressful environment of his work place.  Dr. Wilkinson noted that, due to the hostile work environment, Plaintiff was "experiencing exacerbation of his PTSD symptoms with increased anxiety, poor sleep, increased nightmares, irritability, [and] phobic avoidance of crowed places."

55.     On February 14, 2021, Plaintiff effected a transfer from the LPO to his new work station, as a Financial Analyst at the PBGC.          .

56.     Defendant took materially adverse actions toward Plaintiff that individually and collectively affected his wages, hours and terms and conditions of employment, including, but not limited to, failing to provide requisite training, subjecting him to unreasonable and unachievable performance expectations, issuing him the August 18, 2020 performance improvement plan with a ludicrously short performance review period of 45-days, failing to provide guidance and feedback regarding his performance, "failing" him on that performance improvement plan, culminating in the issuance of the November 19, 2020 notice of proposed removal.

57.     Those materially adverse actions taken against Plaintiff were effected contrary to Defendant's policies, procedures, guidelines and regulations and were actions that would have dissuaded a reasonable worker from filing EEO complaints or otherwise engaging in protected activities.

58.    Plaintiff was treated disparately compared to other similarly situated co-workers not in Plaintiff's protected classifications and that had not engaged in similar protected activities, including, but not limited to, Sarika Moudgil.

59.    As a result of the above-stated actions, Plaintiff has suffered economic damages, including, but not limited to, lost wages and benefits, loss of sick and annual leave, receipt of the notice of proposed removal, loss of status and prestige, severe emotional distress, humiliation and embarrassment, medical expenses, attorney's fees and costs associated with this lawsuit.

## COUNT I

### UNLAWFUL DISCRIMINATION IN VIOLATION OF § 703 OF THE CIVIL RIGHTS ACT OF 1964

60.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

61.    Plaintiff is of Haitian descent with a dark complexion.

62.    Between January 2017 and November 2020, Plaintiff's managers not of Haitian descent, including, but not limited to, Robert Marcum, Heather Menze, Hernan Cortes and Mauricio Paredes, took a series of discriminatory adverse actions toward Plaintiff because of his national origin and race/color, including, but not limited to, failing to provide requisite training, subjecting him to unreasonable and unachievable performance expectations, issuing him the August 18, 2020 performance improvement plan with a ludicrously short performance review period of 45-days, failing to provide guidance and feedback regarding his performance, "failing" him on that performance improvement plan, culminating in the issuance of the November 19, 2020 notice of proposed removal.

63.    Plaintiff suffered the unlawful adverse actions described above.

64.    Plaintiff's national origin and race/color were determining factors in the adverse actions described above.

65.    The explanations offered by Defendant for its actions are pretextual.

66.    Defendant's actions were unlawful and in violation of §§703 and 715 and of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2(a) and 2000e-16.

67.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

### UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF THE CIVIL RIGHTS ACT OF 1964

68.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

69.    Plaintiff began engaging in protected activities under Title VII beginning on November 2, 2018, when he initially opposed unlawful employment practices.  On August 18, 2020, he initiated contact with an Agency EEO representative and filed his informal complaint of discrimination and retaliation.  Plaintiff filed his formal complaint of discrimination on November 24, 2020.  That complaint was investigated and remained open throughout Plaintiff's remaining tenure with the Agency.

70.    Plaintiff has suffered retaliation including, but not limited to, failing to provide requisite training, subjecting him to unreasonable and unachievable performance expectations, issuing him the August 18, 2020 performance improvement plan with a ludicrously short performance review period of 45-days, failing to provide guidance and feedback regarding his performance, "failing"

13

him on that performance improvement plan, culminating in the issuance of the November 19, 2020 notice of proposed removal.

71.    Defendant has taken materially adverse actions against Plaintiff for his engaging in protected activities, including opposing unlawful employment practices and participating in protected EEO activities.  Such actions would dissuade a reasonable worker from opposing such practices.

72.    There is a strong causal connection between Plaintiff's activities protected under Title VII and the materially adverse actions taken against him.

73.    But-for Plaintiff's protected activities, Defendant would not have taken the materially adverse actions described above.

74.    Defendant's explanations for its actions are pretextual.

75.    Defendant retaliated against Plaintiff in violation of §§704 and 717 of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 and 2000e-16.

76.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

**COUNT III**

**UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION
OF THE CIVIL RIGHTS ACT OF 1964**

77    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

78.    Because of his national origin, race/color and after Plaintiff opposed unlawful employment practices, beginning in 2017, Plaintiff's managers, including, but not limited to Robert Marcum,

14

Heather Menze, Hernan Cortes and Mauricio Paredes, began and continued an unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of his having opposed unlawful employment practices under Title VII and for participating in protected EEO activities.

79.     Such harassment, intimidation and ridicule created a workplace that was permeated with retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

80.     Defendant's managers' (identified in ¶78 above) discriminatory and retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive them to be so.

81.     Defendant's actions affected the terms, conditions and privileges of Plaintiff's employment.

82.     Defendant knew or should have known of Marcum's, Menze's, Cortes' and Paredes' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

83.     Defendant created and condoned an unlawful discriminatory and retaliatory work environment against Plaintiff in violation of §§704 and 717 of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3 and 2000e-16.

84.      As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

15

## COUNT IV

## UNLAWFUL DISCRIMINATION IN VIOLATION OF §§501 and 504
## OF THE VOCATIONAL REHABILITATION ACT OF 1973

85.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

86.    At all times relevant to this Complaint, Plaintiff was a qualified person with a disability, able to perform the essential functions of his job with or without reasonable accommodation.

87.    Between January 2017 and November 2020, Plaintiff's managers including, but not limited to, Robert Marcum, Heather Menze, Hernan Cortes and Mauricio Paredes, took a series of discriminatory adverse actions toward Plaintiff because of his disabilities, including, but not limited to, failing to provide requisite training, subjecting him to unreasonable and unachievable performance expectations, issuing him the August 18, 2020 performance improvement plan with a ludicrously short performance review period of 45-days, failing to provide guidance and feedback regarding his performance, "failing" him on that performance improvement plan, culminating in the issuance of the November 19, 2020 notice of proposed removal.

88.    Plaintiff suffered the unlawful adverse actions described above.

89.    Plaintiff's disabilities were the determining factor in the adverse actions described above.

90.    The explanations offered by Defendant for its actions are pretextual.

91.    Defendant's actions were unlawful and in violation of §§501 and 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§791 and 794(a).

92.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

16

## COUNT V

### UNLAWFUL RETALIATION IN VIOLATION
### OF §§501 and 504 OF THE VOCATIONAL REHABILITATION ACT OF 1973

93.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

94.    Plaintiff began engaging in protected activities under the VRA beginning on November 2, 2018, when he initially opposed unlawful employment practices.  On August 18, 2020, he initiated contact with an Agency EEO representative and filed his informal complaint of discrimination and retaliation.  Plaintiff filed his formal complaint of discrimination on November 24, 2020.  That complaint was investigated and remained open throughout Plaintiff's remaining tenure with the Agency.

95.    Plaintiff has suffered retaliation including, but not limited to, failing to provide requisite training, subjecting him to unreasonable and unachievable performance expectations, issuing him the August 18, 2020 performance improvement plan with a ludicrously short performance review period of 45-days, failing to provide guidance and feedback regarding his performance, "failing" him on that performance improvement plan and issuing the November 19, 2020 notice of proposed removal.

96.    Defendant has taken materially adverse actions against Plaintiff for his engaging in protected activities, including opposing unlawful employment practices and participating in protected EEO activities.  Such actions would dissuade a reasonable worker from opposing such practices.

97.    There is a strong causal connection between Plaintiff's activities protected under the VRA and the materially adverse actions taken against him.

17

98.    But-for Plaintiff's protected activities, Defendant would not have taken the materially adverse actions described above.

99.    Defendant's explanations for its actions are pretextual.

100.    Defendant retaliated against Plaintiff in violation of §§501 and 504 of the VRA, 29 U.S.C. §§791 and 794(a).

101.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

**COUNT VI**

**UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION
OF §§501 AND 504 OF THE VOCATIONAL REHABILITATION ACT OF 1973**

102.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

103.    Because of his disabilities and after Plaintiff opposed unlawful employment practices, beginning in 2017, Plaintiff's managers, including, but not limited to Robert Marcum, Heather Menze, Hernan Cortes and Mauricio Paredes, began and continued an unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of his having opposed unlawful employment practices under the VRA and for participating in protected EEO activities.

104.    Such harassment, intimidation and ridicule created a workplace that was permeated with retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

105.    Defendant's managers' (identified in ¶103 above) discriminatory and retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive them to be so.

106.    Defendant's actions affected the terms, conditions and privileges of Plaintiff's employment.

107.    Defendant knew or should have known of Marcum's, Menze's, Cortes' and Paredes' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

108.    Defendant created and condoned an unlawful discriminatory and retaliatory work environment against Plaintiff in violation of §§501 and 504 of the VRA, 29 U.S.C. §§791 and 794(a).

109.     As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VII
## CONSTRUCTIVE DISCHARGE

110.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

111.     Robert Marcum's, Heather Menze's, Hernan Cortes' and Mauricio Paredes' abusive, discriminatory and retaliatory actions continued unabated and unremediated from October 2018 until February 2021.  Such conduct directly and catastrophically adversely affected Plaintiff's health and his ability to perform his job.

112. On January 11, 2021, Plaintiff's treating psychiatrist, Dr. Ninala Jennefer Wilkinson, recommended that, because Plaintiff was "experiencing exacerbation of his PTSD symptoms with increased anxiety, poor sleep, increased nightmares, irritability, [and] phobic avoidance of crowed places," he should "remove himself from the hostile stressful environment of his workplace."

113. In February 2021, Plaintiff no longer could tolerate the abusive discriminatory, retaliatory and harassing conduct and the abusive workplace in the LPO, and, based on his physician's recommendation, he sought employment outside the Agency.

114. Because of those managers' (Marcum, Menze, Cortes and Paredes) abusive actions, culminating in the November 2020 Notice of Proposed Removal, required Plaintiff to attempt to find another federal position. In February 2021, Plaintiff resigned his LPO position and accepted a position at significantly lower compensation with the PBGC.

115. That action was not voluntary. The discriminatory and retaliatory conduct and harassment suffered by Plaintiff was so intolerable that a reasonable person would have been compelled to resign. The LPO's managers' actions left Plaintiff with no reasonable alternative to involuntary resignation from his LPO position and taking a demotion.

116. Defendant intentionally and unlawfully discriminated and retaliated against Plaintiff and intentionally and unlawfully interposed a hostile and offensive work environment against Plaintiff.

117. LPO managers deliberately made Plaintiff's working conditions intolerable.

118. Plaintiff was constructively discharged from his position with the Agency.

119. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Honorable Court grant him the following relief, namely:

(i)      That this Court determines that the employment practices complained of in this  Complaint are unlawful in that they violate the Vocational Rehabilitation Act and Title VII of the Civil Rights Act of 1964;

(ii)     That Defendant pays Plaintiff a sum in excess of $300,000 for compensatory damages.

(iii)    That Defendant pays Plaintiff his actual damages;

(iv)    That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action; and

(v)     That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED:  FEBRUARY 28, 2022.

_____
Nathaniel D. Johnson (MD Bar #14729)
Attorney for Plaintiff
Employment Law Firm, LLC
3261 Old Washington Road, Suite 2020
Waldorf, MD 20602
301 645-9103/888 492-9434 (fax)
ndjesquire@gmail.com