UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARQUES J. RENÉ,

  Plaintiff,

   v.          Civil Action No. 22-519 (JEB)

JENNIFER M. GRANHOLM,

  Defendant.

<u>MEMORANDUM OPINION</u>

  Plaintiff Marques René, a disabled veteran of Haitian descent, alleges that his former employer, the Department of Energy, discriminated and retaliated against him based on his race, national origin, sex, disability, and veteran status.  He thus brings this suit under Title VII of the Civil Rights Act and the Rehabilitation Act.  Defendant Secretary of the Department of Energy in moving to dismiss maintains that the vast majority of René's claims are unreviewable, either because he did not exhaust his administrative remedies or because he opted to pursue them through his union's negotiated grievance procedure, barring him from relitigating them now before this Court.  For the remainder of his claims, the Secretary contends that René's Complaint is factually deficient on its face.  Agreeing with Defendant on each of these points, the Court will grant her Motion.

I. **Background**

 A. <u>Factual Background</u>

  The Court, as it must at this stage, draws the facts from the Complaint, presuming them to be true.  <u>See</u> <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  As

additional facts relevant to René's specific claims are discussed later in the Opinion, the Court provides here only an overview of his employment with the Department of Energy.

Plaintiff is a veteran of the U.S. armed forces and has a service-connected disability. <u>See</u> ECF No. 1 (Compl.), ¶ 11. He suffers from physical and mental conditions, including post-traumatic stress disorder, migraine headaches, severe back pain, depression, and anxiety disorders. <u>Id.</u> Notwithstanding these conditions, René is able to perform the essential functions of his job with reasonable accommodation, which makes him a "qualified individual with a disability" under the Rehabilitation Act. <u>Id.</u>, ¶ 13; <u>see</u> 29 U.S.C. § 705(20). He identifies himself as a male of Haitian descent with "dark-hued" skin. <u>See</u> Compl., ¶ 13.

In February 2017, Plaintiff was hired as a Loan Specialist at the GS-13 salary level in the Loan Programs Office of the Department of Energy. <u>Id.</u>, ¶ 15. This was a "ladder" position, meaning that it should have carried with it a promotion to the GS-14 level after a year's successful performance. <u>Id.</u> According to the Complaint, however, Plaintiff stalled in his initial position right out of the gate. He struggled to receive work assignments, <u>id.</u>, ¶ 22, did not receive the guidance, training, or support needed to do his job, <u>id.</u>, ¶ 23, and his requests for more work went unheeded. <u>Id.</u>, ¶¶ 24–26. Additionally, despite receiving performance appraisals indicating that he "meets expectations" throughout his three years on the job, Plaintiff never received his expected GS-14 promotion. <u>Id.</u>, ¶ 17. This was, he contends, the result of discrimination and retaliation on the basis of his race, sex, national origin, disability, and veteran status. <u>Id.</u>, ¶¶ 6, 43.

René supports this allegation by recalling a series of discriminatory acts that forestalled his advancement during the course of his four years with the Loan Programs Office. For example, in April 2018, he asked his supervisor at the time — Hernan Cortes, a Hispanic male

— to provide him with an "Individual Development Plan ('IDP') that would have placed him on the path for full performance at the GS-14 level" but was denied.  Id., ¶¶ 28-30.  He also reports that Cortes "made fun of [him] because he has an accent and is Haitian," id., ¶ 19, and informed other personnel in the Loan Programs Office that "he did not want Plaintiff to interact with [the Office's] customers because it would be bad business for the Department of Energy."  Id. Meanwhile, Plaintiff's coworkers who did not belong to the same protected classes as he did, including an Indian female and a non-disabled white male, reportedly received training, mentorship, individual development plans, and favorable work assignments that Plaintiff was denied.  Id., ¶¶ 31–33.  René raised concerns about this treatment at an October 2018 performance review, during which he accused his managers of discriminating against him by not promoting him.  Id., ¶ 34.

Plaintiff also alleges discrimination on the basis of his disability.  In May 2019, he requested a reasonable accommodation, asking to be permitted to work remotely three days per week, which the Department granted for a six-month period.  Id., ¶ 37.  René sought to extend that accommodation in February 2020, which the Department granted in August 2020 — an easy decision given that Plaintiff was required to telework full time by that point because of the COVID-19 pandemic.  Id., ¶ 38.  Still, Plaintiff reports that another of his supervisors — Mauricio Paredes, a Hispanic male — harassed him over his telework usage, "regularly complain[ing]" that Plaintiff was teleworking too much and needed to come into the office more frequently.  Id., ¶ 39.  René accordingly complained about this harassment to Cortes, who failed to remediate it.  Id., ¶ 40.

This all came to a head on August 18, 2020, when Plaintiff received a Performance Demonstration Period document, akin to a performance-improvement plan.  Id., ¶ 44.  According

to Plaintiff, this was the first notice he had received of any performance deficiencies on the job. Id.  That PDP required him to meet ten performance objectives by the end of the following month, which Plaintiff alleges were "unreasonable" and impossible to complete.  Id., ¶ 45.  This was especially so because René left on bereavement leave in late September.  Id., ¶ 49.  On October 13, 2020, he received a PDP completion document informing him that he had not in fact satisfied the PDP's requirements.  Id., ¶ 50.  A notice of proposed removal followed one month later on November 19, 2020.  Id., ¶ 51.

At this point, fed up with his workplace, Plaintiff resigned his position with the Loan Programs Office on February 14, 2021, and accepted a new position as a Financial Analyst with the Pension Benefit Guaranty Corporation.  Id., ¶¶ 15, 53–55, 114.

B.  Procedural Background

Prior to his resignation from the Loan Programs Office and the filing of this action, René initiated a series of administrative complaints about the alleged discrimination in his workplace. On August 18, 2020, after being placed on a PDP, he contacted an EEO Counselor and filed an informal complaint of discrimination on account of race, sex, national origin, and disability.  Id., ¶¶ 6, 46.  In November, after Plaintiff was issued a notice of proposed removal, his union — a member of the National Treasury Employees Union — filed a Step One Grievance on his behalf under the negotiated grievance procedure found in the union's collective bargaining agreement with the Department.  Id., ¶ 52.  Five days later, on November 24, he also filed a formal EEO complaint alleging discrimination on account of race, sex, national origin, disability, and reprisal. Id., ¶ 6.  The Department issued a decision denying Plaintiff his requested relief in response to his Step One Grievance on December 10, 2020.  See ECF No. 7-1 (Mot. to Dismiss) at 9.

René then filed this suit on February 28, 2022.  The Complaint lists seven counts.  Counts I, II, and III allege discrimination, retaliation, and hostile work environment on the basis of national origin, race, and color in violation of Title VII.  Counts IV, V, and VI allege the same three causes of action on the basis of disability under the Rehabilitation Act.  Count VII asserts constructive discharge.  The Department of Energy now moves to dismiss.

## II.    Legal Standard

Defendant makes both jurisdictional and merits arguments for dismissal of Plaintiff's Title VII and Rehabilitation Act claims.  In response to a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving that the court has subject-matter jurisdiction to hear her claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

The Secretary also asks this Court to dismiss Plaintiff's suit on the merits for failure "to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

### III.    Analysis

The Court will begin with Defendant's contention that René did not exhaust his administrative remedies with respect to certain of the Title VII and Rehabilitation Act discrimination and retaliation claims in Counts I, II, IV, and V, as well as his hostile-work-environment claims in Counts III and VI.  It will then assess whether his decision to pursue the Department's negotiated grievance procedure bars him from asserting any of his remaining exhausted non-hostile-environment causes of action.  Finally, it will move to the merits of the claims left standing (Counts III, VI, and VII).

A.  Exhaustion

The Court examines the exhaustion arguments separately for the discrete actions René

challenges and his hostile-work-environment claims.

1.  *Discrete Employment Actions (Counts I, II, IV, and V)*

Counts I, II, IV, and V, which assert discrimination and retaliation under Title VII and

the Rehabilitation Act, assail discrete employment actions that occurred "[b]etween January

2017 and November 2020."  Compl., ¶¶ 62, 87.  The challenged actions include, *inter alia*,

"failing to provide requisite training," "subjecting [Plaintiff] to unreasonable and unachievable

performance expectations," "failing to provide guidance and feedback regarding his

performance," issuing the unreasonable PDP on August 18, 2020, and issuing the notice of

proposed removal on November 19, 2020.  Id., ¶¶ 62, 70, 87, 95.

Before filing suit, a federal employee alleging a Title VII violation must timely exhaust

his administrative remedies or be barred from judicial relief.  See Harris v. Gonzales, 488 F.3d

442, 443 (D.C. Cir. 2007); Hill v. Kempthorne, 577 F. Supp. 2d 58, 64 (D.D.C. 2008).  The same

is true for the Rehabilitation Act.  Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015) (citing

29 U.S.C. § 794a(a)(1)).  To satisfy this requirement, "[a]n aggrieved person must initiate

contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be

discriminatory or, in the case of personnel action, within 45 days of the effective date of the

action."  29 C.F.R. § 1614.105(a)(1).  Failure to do so renders a claim untimely and the

administrative remedies unexhausted.

In this case, René initiated contact with an EEO counselor on August 18, 2020.  Id.,

¶¶ 45, 69, 94.  His claims based on his PDP and notice of proposed removal are therefore timely,

as each of those actions occurred within 45 days of this contact.  The dispute here, conversely, is

7

whether his charges alleging acts <u>before</u> July 4, 2020 — that is, more than 45 days before August 18 — are also timely exhausted.  René insists that his complaints about those acts — including, *inter alia*, "failing to provide requisite training" and "subjecting him to unreasonable and unachievable performance expectations," <u>id.</u>, ¶ 62 — survive this Motion to Dismiss because they are "like or reasonably related" to the acts underlying his timely claims.  <u>See</u> ECF No. 10 (Opp. to MTD) at 18.  That is incorrect.  The Supreme Court has explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002).

Notwithstanding this rule, it remains an open question "to what extent the Supreme Court's decision displaced . . . earlier cases [that] maintained some form of the 'reasonably related' exhaustion exception" for claims regarding discrete discriminatory employment actions. <u>See</u> <u>Poole v. U.S. Gov't Publ'g Off.</u>, 258 F. Supp. 3d 193, 201 (D.D.C. 2017) (describing the development of law in this area).  Some judges in this district have continued to recognize such an exception where unexhausted discrimination and retaliation claims regarding discrete acts satisfy the "like or reasonably related" test.  <u>Hicklin v. McDonald</u>, 110 F. Supp. 3d 16, 19–20 (D.D.C. 2015).  The majority of those to approach the question, however, "have interpreted <u>Morgan</u> to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, 'regardless of any relationship that exists between those discrete claims and any others.'" <u>Id.</u> (quoting <u>Rashad v. Wash. Metro Area Transit Auth.</u>, 945 F. Supp. 2d 152, 165–66 (D.D.C. 2013) (collecting cases)).  For its part, the D.C. Circuit has repeatedly ducked this question and

did so again as recently as this year.  See Webster v. Del Toro, 49 F.4th 562, 568 (D.C. Cir.

2022); Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010); Weber v. Battista, 494 F.3d 179, 184

(D.C. Cir. 2007).

Even under such a relatedness standard, however, Plaintiff has not offered any argument

linking the various disconnected discrete actions predating the summer of 2020 — including

failure to provide training and feedback beginning in January 2017 — with the PDP issued on

August 18, 2020, and the later decision to issue a notice of proposed removal.  He argues only

that these earlier time-barred employment actions are relevant as "background evidence" to

support the timely claims.  See Opp. at 20.  This is not enough to show that these earlier claims

would necessarily "arise from the administrative investigation that can reasonably be expected to

follow the charge of discrimination."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)

(internal quotations omitted).

The Court, consequently, will dismiss as unexhausted Plaintiff's discrimination and

retaliation claims in Counts I, II, IV, and V that arise from events that occurred before July 4,

2020.  It will shortly address his challenges to the notice of proposed removal he received on

November 19, 2020, and the PDP handed out three months earlier.

### 2.  *Hostile Work Environment (Counts III and VI)*

"The exhaustion of administrative remedies requirement is less stringent for hostile work

environment claims than for discrete claims of discrimination or retaliation."  Na'im v. Rice, 577

F. Supp. 2d 361, 372 (D.D.C. 2008) (citations omitted).  "[O]ngoing discriminatory acts, such as

those of hostile work environment, 'are different in kind from discrete acts [because t]heir very

nature involves repeated conduct.'"  Gordon v. Napolitano, 786 F. Supp. 2d 82, 84 (D.D.C.

2011) (quoting Morgan, 536 U.S. at 115).  "For purposes of timeliness, the 'unlawful

employment practice' 'cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years . . . .'"  Ashraf-Hassan v. Embassy of France, 878 F. Supp. 2d 164, 172 (D.D.C. 2012) (quoting Morgan, 536 U.S. at 115).  Even if some of the component acts of a hostile-work-environment claim would be time barred if brought as individual claims, "the entire time period of the hostile environment may be considered by a court for purposes of determining liability" if "an act contributing to the claim occurs within the filing period."  Morgan, 536 U.S. at 117.

Here, the Secretary argues that Plaintiff failed to exhaust his hostile-work-environment claims because his "Formal EEO Complaint did not assert" such a claim and instead primarily relied on his allegations of discrete discrimination and retaliation claims.  See MTD at 18; see also ECF No. 13 (Def. Reply) at 14 n.6 (noting that "Agency did not accept a hostile work environment claim for investigation").  Plaintiff did, however, note in his formal complaint that his supervisor, Parades, subjected him to a "[h]ostile work environment, workplace harassment, and discrimination," and he made the same allegations in relation to another supervisor.  See ECF No. 10 (Pl. Opp.) at 21; ECF No. 7-5 (Pl. Formal EEO  Compl.) at 3.  For our purposes, the Court thus finds that Plaintiff did in fact raise hostile work environment in his EEO complaint.  See Steele v. Schafer, 535 F.3d 689, 694 (D.C. Cir. 2008) (rejecting argument that plaintiff had not asserted a hostile-work-environment claim in her complaint because the "complaint alleges 'discrimination,' which in principle includes a hostile work environment theory" and specifically included a request for "reassignment 'to a less hostile working environment'").  It will thus examine the merits of these causes of action below.

B.  Remaining Discrete Employment Actions

As described above, what remains of Plaintiff's discrimination and retaliation causes of action in Counts I, II, IV, and V are his placement on a PDP on August 18, 2020, and the issuance of the notice of proposed removal (NPR) on November 19, 2020.  See Compl., ¶¶ 62, 70, 87, 95.  Defendant contends that these extant claims must nevertheless be dismissed for lack of jurisdiction because René chose to pursue them under his union's negotiated grievance procedure, precluding him from bringing the same claims through an EEO complaint.  The Court agrees.

The Department is correct that "under the Civil Service Reform Act ('CSRA'), a federal employee who believes he has been discriminated against and whose agency's negotiated agreement permits the acceptance of grievances alleging discrimination may file either a grievance or an EEO complaint, but not both."  Smith v. Jackson, 539 F. Supp. 2d 116, 130 (D.D.C. 2008) (citing 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a)).  "An employee who files a timely written grievance irrevocably chooses the negotiated grievance procedure route, and is precluded from filing an EEO complaint on the 'same matter.'"  Id. (citing Johnson v. Peterson, 996 F.2d 397, 399 (D.C. Cir. 1993), and Am. Fed. of Gov't Emps., Local 2052 v. Reno, 992 F.2d 331, 333–34 (D.C. Cir. 1993)).  As a result, he is committed to exhausting his agency's procedures, including through an appeal of final agency action following arbitration to the EEOC.  See Reply at 8.  "Only after the EEOC has rendered a decision or failed to do so within 180 days may the employee . . . initiate suit in district court."  Johnson, 996 F.2d at 401.

The parties agree that Plaintiff was covered by the union's collective bargaining agreement and that a decision to pursue a discrimination claim through the agreement's grievance procedure is "irrevocable."  Opp. at 25; Reply at 14.  They also agree that René's

union representative filed a Step One Grievance on November 20, 2020, four days before he filed his EEO complaint.  See Reply at 14; see also 29 C.F.R. § 1614.301(a) (noting "election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance"); id. (noting "election to proceed" under EEO complaint process "is indicated only by the filing of a written complaint; use of the pre-complaint process . . . does not constitute an election for purposes of this section").  Plaintiff nevertheless contends that he may pursue those claims in this litigation because his grievance "did not challenge the PDP itself" and "did not challenge the [NPR] as discriminatory, retaliatory, or harassing."  Opp. at 25.  In other words, René maintains that what he grieved was not the "same matter" as what undergirds his lawsuit here.  But that argument hinges on an overly narrow view of the term.

In determining whether an employee raised the "same matter" for purposes of the CSRA in a negotiated grievance procedure, thus barring her from relitigating that claim, judges in this district have looked to whether the claims at issue concerned the same "topic" or were "rooted in the same factual nucleus."  Jackson, 539 F. Supp. 2d at 130 (citing Guerra v. Cuomo, 176 F.3d 547, 550 (D.C. Cir. 1999), and Rosell v. Wood, 357 F. Supp. 2d 123, 131 (D.D.C. 2004)); see also Nagi v. Buttigieg, No. 16-2152, 2022 WL 2904261, at *3 n.4 (D.D.C. July 22, 2022).  Whatever test this Court applies, it is clear that René did raise the same issues through his negotiated grievance procedure as he attempts to relitigate here.

For example, in his Step One Grievance, Plaintiff references identical conduct that he challenges in Counts I, II, IV, and V — namely, that his supervisor Paredes engaged in "a pattern of placing [Plaintiff] in situations to discriminate against him or treat [him] disparately from peers because [he] is a minority and a veteran with disabilities," which, in turn, "led to a hostile work environment."  ECF No. 7-2 (Grievance) at 2–3.  Plaintiff's formalistic argument that he

did not target the PDP or NPR documents themselves is in tension with the D.C. Circuit's observation that, in construing what constitutes the same "matter," courts typically look to "more than a legal claim and instead to . . . the 'underlying action' or the 'topics' raised." Cuomo, 176 F.3d at 550 (internal citation omitted).

In responding to Defendant's preclusion argument, Plaintiff also contends that the Government relies on matters outside of the pleadings and that this Court should therefore convert the Motion to Dismiss into one for summary judgment. See Opp. at 17; ECF No. 11 (Pl. Discovery Motion) at 5–6. Assuming conversion, Plaintiff also files a Cross-Motion under Rule 56(d) to defer consideration of the Motion to Dismiss and allow him to take discovery so that he can fully respond to the Secretary's argument. See Pl. Discovery Motion. To begin, Defendant's preclusion arguments under the CSRA are jurisdictional. The Court, consequently, "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss" under Rule 12(b)(1). Jerome Stevens Pharm., Inc., 402 F.3d at 1253. "As the [C]ourt is not converting [Defendant's Motion] into one seeking summary judgment, Plaintiff's request under Rule 56 simply does not come into play." Dial v. Kane, 315 F. Supp. 3d 556, 560 (D.D.C. 2018).

In any event, there is no fundamental unfairness here because both sides rely on the same attached documents. Cf. Jones v. Lattimer, 29 F. Supp. 3d 5, 8–9 (D.D.C. 2014) (noting that in exercising discretion over whether to convert motion to dismiss into motion for summary judgment, the "reviewing court must assure itself that summary judgment treatment would be fair to both parties") (quoting Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012)). For example, Defendant's Exhibits 1 and 2 contain Plaintiff's Step One Grievance and the agency's decision on the same. See ECF Nos. 7-2 (Pl. Grievance); 7-3 (Agency Decision).

Exhibits 3, 4, and 5 contain Plaintiff's informal EEO complaint, formal EEO complaint, and request to amend his formal EEO complaint.  See ECF Nos. 7-4 (Pl. Informal EEO Compl.); 7-5 (Pl. Formal EEO Compl.); 7-6 (Pl. EEO Amend.).  Plaintiff himself relies on many of these same exhibits in his Opposition, sometimes citing Defendant's exhibits and other times attaching the same documents as his own exhibits.  See Opp., Exh. 5 (Pl. Grievance) (same as ECF No. 7-2); Opp., Exh. 6 (Agency Decision) (same as ECF No. 7-3); Opp. at 10 (citing Pl. Informal EEO Compl., ECF No. 7-4); id. at 12 (citing Pl. Formal EEO  Compl., ECF No. 7-5); id. at 14 (citing Pl. EEO Amend., ECF No. 7-6).  There is thus no real dispute over much of what these exhibits demonstrate, including the date of Plaintiff's contact with an EEO counselor, which René also alleges in his Complaint.  See Compl., ¶ 46; Opp. at 10.

Because it is clear that Plaintiff irrevocably committed to prosecuting his claims through his union's grievance procedure, these causes of action must be dismissed for lack of jurisdiction.

C.  Hostile Work Environment

The Court next returns to Plaintiff's hostile-work-environment claims (Counts III and VI).  Although the Government briefly argues that they were also raised within the scope of Plaintiff's Step One Grievance and should therefore be precluded, they also clearly fail on the merits even if not precluded.  "The bar for demonstrating a hostile work environment is a high one: '[A] plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008)); see also Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir.

2013).  In evaluating a hostile-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch, 550 F.3d at 1201 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)).  By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted).  While a plaintiff need not prove a hostile work environment at this stage, she still must allege "extreme" conduct that satisfies the "demanding" standard for such a claim.  Id.

Although some of René's allegations — including his supervisor's mocking of his Haitian accent — are troubling, they do not cumulatively meet the high bar required of hostile-environment claims.  To begin, Plaintiff points to a series of "work-related actions by supervisors" that "courts typically do not find . . . to be sufficient for a hostile-environment claim." Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (citation omitted); see also Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").  These include lack of training, mentoring, and favorable work opportunities, see Compl. ¶¶ 24–30, 33–36, 38–39; Opp. at 23, and other slights such as a supervisor's direction to avoid having René interact with customers or criticizing his telework time.  See Compl., ¶¶ 38–39; Opp. at 23.

These actions do not rise to the level of conduct that is "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris, 510 U.S. at 21; see, e.g., Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing

hostile-work-environment claim where allegations of "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments d[id] not sufficiently demonstrate a significant level of offensiveness"); id. ("Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context.") (citations omitted). Even the comment from René's manager disparaging his accent does not help him over the bar. See Nagi v. Chao, No. 16-2152, 2018 WL 4680272, at *3 (D.D.C. Sept. 28, 2018) ("It has long been clear in this district that isolated incidents of offensive language and even ethnic or racial slurs do not 'affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'") (citation omitted).

    D. Constructive Discharge

    Last up is Count VII, Plaintiff's constructive-discharge claim.  René argues that, by January 2021, "working conditions in the LPO were so intolerable" that they took a toll on his mental health and "compelled [him] to resign."  Opp. at 32.  As support for this claim, he points to a letter from his mental-health provider, which recommends that René "remove himself from the hostile stressful environment of his [workplace]" and "attend Trauma service program to address his PTSD symptoms."  Id. at 32–33 (quoting ECF No. 10-11 (Letter from Ninala Jennefer Wilkinson, M.D.)).  Under constructive-discharge doctrine, "an employee's reasonable decision to resign because of unendurable working conditions . . . [may amount to] a formal discharge for remedial purposes."  Penn. State Police v. Suders, 542 U.S. 129, 141 (2004).  Such claims are therefore designed to address situations in which employers coerce employees to resign by creating intolerable working conditions.  Id.

16

To support such a claim in the discrimination context, René must allege that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."  Green v. Brennan, 578 U.S. 547, 555 (2016) (describing elements for constructive-discharge claim under Title VII).  These conditions must go beyond "ordinary" discrimination.  Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997). The conduct, in fact, must amount to more than that required to support a hostile-work-environment claim so that the plaintiff's resignation qualifies as a fitting response to the discrimination.  Schafer, 535 F.3d at 694–95.  In other words, in a run-of-the-mill hostile work environment, an employee is expected to "mitigate damages by remaining on the job unless that job presents such an aggravated situation that a reasonable employee would be forced to resign." Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir. 1981) (quotation marks omitted).  An employee's decision to retire is thus insufficient for constructive discharge where driven only by concern for the effect of the job's normal tasks on her health.  See, e.g., Spence v. Md. Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993) ("[T]he fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms of his performance, and as a result determines that health considerations mandate his resignation, does not normally amount to a constructive discharge by the employer.").  Likewise, a failure to promote, lack of training, and disagreements over telework policies are not the sort of "aggravating factors" necessary to support a constructive-discharge claim.  Veitch v. England, 471 F.3d 124, 131 (D.C. Cir. 2006).

Suffice it to say, the allegations in René's Complaint fall far short of this standard.  As this Court already explained, he failed to state a plausible hostile-work-environment claim and so clearly cannot meet the more stringent standard required for constructive discharge.  Even

considering all of René's factual allegations — including his supervisor's inappropriate comment on his accent — the Complaint does not meet the demanding requirement that he show that his situation had become "so disagreeable, [as to] prevent the reasonable employee from seeking remediation on the job." Id. at 130.  This claim, too, must be dismissed.

## IV.    Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 20, 2022